UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CHERIE SUMMERALL,

      Plaintiff,

  v.              Case No.  5:06-cv-270-Oc-10GRJ

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

   Plaintiff appeals to this Court from a final decision of the Commissioner of Social

Security (the "Commissioner") denying her application for Supplemental Security

Income. (Doc. 1.) The Commissioner has answered (Doc.13) and both parties have filed

briefs outlining their respective positions. (Docs. 20 & 21.)  For the reasons discussed

below, the Commissioner's decision is due to be **AFFIRMED.**

## I.  PROCEDURAL HISTORY

   Plaintiff filed an application for disability insurance benefits (DIB) and

supplemental security income (SSI) on October 31, 2002 (R. 76-78, 250-53), alleging a

disability beginning on July 31, 1997. (R. 76, 250.) During the October 24, 2003 hearing

before Administrative Law Judge James R. Ciaravino (the "ALJ"), Plaintiff amended her

alleged onset date to October 31, 2001 and withdrew her application for DIB. (R. 22.)

---

[1]Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local
Rules, M.D. Fla., within ten (10) days after service of this report and recommendation.  Failure to file timely
objections shall bar the party from a *de novo* determination by a district judge and from attacking factual
findings on appeal.

Plaintiff's application for SSI was denied initially (R. 255-56), and upon reconsideration. (R. 260-63.) Thereafter, Plaintiff requested a hearing which was held on October 24, 2003 before the ALJ. (R. 19-54.) The ALJ issued a decision unfavorable to Plaintiff on November 24, 2003. (R. 7-16.) The Appeals Council denied Plaintiff's request for review on February 6, 2004. (R. 2-6.)

Plaintiff then appealed to this Court which remanded the case to the Commissioner for further proceedings on December 15, 2004. (R. 292-93.) On July 23, 2005, the Appeals Council ("AC") vacated the ALJ's decision and remanded the case to the ALJ for a new hearing. (R. 298-301.) A supplemental hearing was held before the ALJ on December 5, 2005. (R. 347-390.) The ALJ issued a decision unfavorable to Plaintiff on April 5, 2006. (R. 269-79.) The Appeals Council denied Plaintiff's request for review on May 26, 2006. (R. 264-66.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as

---

[2] See 42 U.S.C. § 405(g).

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

2

finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[6]   The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7]  The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[8]

    The ALJ must follow five steps in evaluating a claim of disability.[9]  First, if a claimant is working at a substantial gainful activity, she is not disabled.[10] Second, if a claimant does not have any impairment or combination of impairments which

---

[4] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[12] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[13] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[17]

---

[11] 20 C.F.R. § 404.1520(c).

[12] 20 C.F.R. § 404.1520(d).

[13] 20 C.F.R. § 404.1520(e).

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[16] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[17] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[18] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[22]

### III.  SUMMARY OF THE EVIDENCE

Plaintiff was born on March 6, 1963 and was thirty-eight years old as of the October 31, 2001 amended application and was forty-three years old on the date of the decision by the ALJ. (R. 351-52.) Plaintiff attended high school through the ninth grade

---

[18] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[19] Walker at 1003.

[20] Wolfe at 1077-78.

[21] See id.

[22] See Doughty at 1278 n.2.

and later obtained her GED in 1991. (R. 352.) Her past relevant work includes working at nurseries from 1985 -1989, working as a sheet inspector for Hallmark from 1989-1990, working as a bank teller for three months in 1995, working as an electrician's helper for her spouse from 1996-1997 and attending bank teller training in 1997. (R. 83.) Plaintiff alleges that she was no longer able to work in July of 1997 due to Rheumatoid Arthritis, herniated disks, and depression. (R. 26 and 82.)

Of particular relevance to this appeal are the medical records from Plaintiff's treating sources, Kenneth Stark, M.D. and Angela Ford, ARNP. As well as the consultative examinations performed by Donald Tindall and Hugh Brown, Ph.D., and the state agency examiners.

Dr. Stark treated Plaintiff for Rheumatoid Arthritis (RA) beginning in September of 1997. (R. 157.) At that time, Dr. Stark prescribed Plaquenil, Calcium and Vitamin D for the RA, which he monitored through February 2000 as "RA functional class II disease." (R. 151-57.) Dr. Stark also treated Plaintiff for depression with Paxil, Mehtotrexate and Prednisone. Id. By March 27, 2002, Dr. Stark characterized Plaintiff's condition as "RA functional class II." (R. 149, 235.) Dr. Stark noted that Plaintiff's symptoms included moderate stiffness, diminished ability to bend and fair grip strength. (R. 233.)

Additional care for Plaintiff's RA and depression was provided by Preferred Healthcare by Nurse Ford in September and October of 2003. (R. 242-44). Nurse Ford noted that Plaintiff complained of depression, abdominal cramping, epigastric problems, hemorrhoids and diarrhea. (R. 242-46.)

Nurse Ford also treated Plaintiff from March 17, 2004 through May 4, 2005. Nurse Ford's records reflect that Plaintiff complained of joint pain and stiffness, sore

throat, malaise, cough, tender cervical lymph nodes, occasional episodes of diarrhea, feeling stressed, itchy rash, fatigue, urinary frequency, constipation, neck and low back pain and vaginitis. (R. 329-334.) Plaintiff's medications from January 2004 through June 2004 included Plaquenil, Lexapro, Metamucil, Prednisone, Humira, Colace, Lactulose, Buspar and Celebrex. (R. 336.)

Dr. Stark continued to care for Plaintiff's RA and anxiety and depression. (R. 340-44.) Dr. Stark assigned Plaintiff a global assessment of "Fair" and noted her variable symptoms of mild to moderate polyarthritis, fatigue, debilitating back pain, paraspinal tenderness, rash and diminished ability to bend. Id.

A consultative examination was performed by Dr. Donald J. Tindall. (R. 160-62.) Dr. Tindall found that Plaintiff could comfortably sit for 60 minutes, stand for 30 minutes at a time, walk about 4 blocks before stopping to rest and lift about 10 pounds. (R. 160-161.) Dr. Tindall concluded that Plaintiff "has the functional ability to alternatively sit and stand ad lib doing sedentary work for 6-8 hours daily with bending and twisting on an occasional basis and no repetitive use or forceful squeezing with the hands." (R. 162.)

Dr. Brown performed a consultative psychiatric exam on Plaintiff on February 12, 2002. (R. 163-64.) Dr. Brown reported that Plaintiff had depressive symptoms. (R. 163.) Dr. Brown diagnosed Plaintiff with Adjustment Disorder with Depressed Mood and Pain Disorder Associated with Arthritis. (R. 164.) He noted that "she still might have some difficulties in understanding, carrying out and remembering instructions and in responding appropriately to supervision, coworkers and work pressures." Id.

State agency doctors also assessed Plaintiff's physical and mental residual functional capacities. (R. 180-87.) David Grippe, M.D., assessed that Plaintiff could

occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds, stand and/or walk about 6 hours in an 8-hour workday and sit about for about 6 hours in an 8-hour workday. (R. 181.) Furthermore, Dr. Grippe noted that Plaintiff's pain seemed to be controlled with medication. (R. 182.)

James J. Green, M.D., M.S., assessed that Plaintiff could occasionally lift/carry 10 pounds and frequently lift/carry less than10 pounds, stand and/or walk at least 2 hours in an 8-hour workday and sit about for about 6 hours in an 8-hour workday. (R. 189.) Dr. Green opined that Plaintiff was limited to sedentary exertion. Id.

Alan Steed, Ph.D filled out the psychiatric review technique. (R. 210-23.) Dr. Steed concluded that Plaintiff's mental impairment, depressive disorder, was not severe. (R. 223.) He found that she was mildly limited her in her daily activities, her social functioning, and her concentration, persistence and pace. (R. 220-21.) Dr. Steed noted that Plaintiff was fully oriented, fully cooperative and attentive. (R. 222.)

During the hearing, Plaintiff discussed her symptoms and limitations, including "sharp, stabbing knife pains" in her knees, wrists and shoulders, headaches from the pain in her neck, low back pain, morning dizziness, fatigue, swelling of her hands in the morning and restless sleep. (R. 360, 363-66, 368, 369, 373.) Plaintiff testified that she could lift five to eight pounds, sit for thirty minutes and stand for fifteen minutes. (R. 366-67.) Plaintiff also complained of difficulty in bending over due to her lower back pain, trouble reaching overhead due to her shoulder pain and wrist pain making it difficult to open jars and hold items without dropping them (R. 367, 368.) However, Plaintiff also testified that her medication seemed to help her rheumatoid arthritis and that her medication lessened her pain. (R. 41, 361.)

As far as her daily activities, Plaintiff stated that she rests for at least four hours during the day, prepares simple meals, watches television, listens to music and occasionally reads the newspaper. (R. 366, 370-72, 375.) Plaintiff also performs housework and laundry with the help of her son. (R. 371, 374.)

## IV.  DISCUSSION

Plaintiff raises three arguments on appeal. First, Plaintiff argues that the ALJ failed to comply with the AC's Remand Order. Secondly, Plaintiff argues that the ALJ's credibility finding is not based on the substantial evidence. Lastly, Plaintiff contends that the Commissioner failed to meet its burden of establishing that there is other work in the national economy that Plaintiff can perform.

### A.  The ALJ Complied With The AC's Remand Order

The Court will turn first to Plaintiff's argument regarding the AC's July 23, 2005 Order. Plaintiff argues that the AC's Remand Order was not followed because the ALJ failed to elicit testimony form the VE regarding Plaintiff's "sit/stand" limitation and because the ALJ did not update the medical treatment record or obtain additional consultative examinations.

According to the Social Security Regulations, on remand by the Appeals Council, the administrative law judge "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order."[23]

---

[23] 20 C.F.R. § 404.977 (a) and (b).

After this Court reversed and remanded this action, the AC vacated the final decision of the Commissioner and remanded the case to an ALJ to conduct proceedings consistent with the Court's Order. (R. 300.) The AC directed the ALJ to conduct a supplemental hearing to obtain the testimony from both the claimant and from a VE. Specifically, the AC stated that "[t]he VE testimony is considered necessary in view of the nonexertional limitations found in the hearing decision, which included a sit-stand option and no repetitive forceful use of the hands..." Id. Additionally, the AC encouraged the ALJ to update the medical treatment record and "obtain additional consultative examinations as needed..." Id.

The ALJ properly followed the AC's requirement that the ALJ conduct a supplemental hearing with a VE regarding Plaintiff's limitation of a "sit/stand option." During the hearing, the ALJ posed a hypothetical question to the VE about Plaintiff's past relevant work. The ALJ included in the hypothetical the statement that Plaintiff "has to be able to change positions because of the nature of the inflammatory arthritis, stiffness and such." (R. 378.) After the VE opined that Plaintiff could not perform her past work, the ALJ began questioning the VE regarding possible jobs that Plaintiff could perform in the national economy given her limitations. (R. 380.) Initially, the ALJ did not include the "sit/stand option" when reciting the RFC to the VE. (R. 380.) However, it is clear from the transcript that the VE understood that the ALJ intended to apply the same RFC as in the earlier hypothetical. Notably, directly after the VE testified that with the stated RFC Plaintiff could perform the jobs of appointment clerk (R. 381), dispatcher (R. 383-84), and animal shelter clerk (R. 384), the ALJ clarified by asking if those jobs accounted for

Plaintiff's sit/stand option to which the VE responded, "Right, yes." (R. 385.)  Accordingly, as to this directive from the AC, the ALJ complied.

With regard to the AC's request that the ALJ update the medical treatment record and obtain an additional consultative examination "as needed" to determine Plaintiff's RFC, the ALJ did not fail to comply with the AC's remand order. While this part of the AC's Remand Order was discretionary, the ALJ , nonetheless, gave the Plaintiff the opportunity at the hearing to submit additional evidence which was made part of the record. (R. 350-51.)

With regard to obtaining a consultative examination, the ALJ was only required to procure a further consultative examination if such an examination was necessary for the ALJ to fully evaluate Plaintiff's RFC. The ALJ had sufficient medical evidence to make an informed evaluation without the need for an additional consultative examination. There were two comprehensive consultative examinations available to the ALJ, which included a physical examination by Dr. Tindal (R. 160-62) and a mental examination by Dr. Brown (R. 163-64). In addition, the ALJ had available to him a state agency physical assessment (R. 180-87) and two state agency mental assessment (R. 165-179 and 196-223). Lastly, the ALJ had available to him medical reports from Plaintiff's treating physicians. (R. 149-57, 232-35, 242-49, 323-26, 329-338, 340-47). This evidence was more than sufficient for the ALJ to conduct his RFC evaluation.

Lastly, had the AC mandated in its remand order that the ALJ obtain further consultative examinations - and the ALJ failed to do so - logic dictates that the AC would have remanded the case to the ALJ for failing to comply with its previous remand order

when the ALJ's unfavorable decision was appealed. The AC did not do so and instead denied Plaintiff's request for review. (R. 264-66.)

**B.  The ALJ's Credibility Finding Is Based On Substantial Evidence**

Plaintiff contends that the ALJ erred in finding that her testimony was not entirely credible.

It is incumbent upon the ALJ to make credibility findings as to the claimant's testimony.[24] The Eleventh Circuit has established a three-part standard to use when evaluating a claimant's subjective complaints of pain or other subjective symptoms.[25] A plaintiff must show: (1) evidence of any underlying medical condition, and either (2) the medical evidence substantiates the severity of the pain from the condition, or (3) that the condition is of sufficient severity that it would reasonably be expected to produce the pain alleged.[26] "Pain alone can be disabling, even when its existence is unsupported by objective evidence."[27] However, a claimant's subjective complaints of pain do not conclusively establish a disability unless accompanied by medical evidence.[28]

---

[24] Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985).

[25] Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).

[26] Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986).

[27] Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987).

[28] 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms *shall not alone be conclusive evidence of disability* as defined in this section; there *must* be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability") (emphasis added).

If an ALJ decides not to credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.[29] An ALJ's credibility determination "does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the reviewing court] to conclude that the ALJ considered her medical condition as a whole.[30] A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.[31]

Plaintiff argues that the ALJ's decision to accord "limited weight" to Plaintiff's testimony was not based on substantial evidence. Plaintiff testified that she cannot work because of her pain, including sharp, stabbing pains in her knees, wrists, and shoulders, and that her medication does not completely alleviate the pain. (R. 360.) She stated that she can only lift five to eight pounds comfortably, sit for 30 minutes and stand for 15 minutes and has trouble opening jars and holding two-liter Pepsi bottles. (R. 366-68.) Plaintiff also testified that her hands are swollen in the morning and that she needs to lie down for four hours during an eight hour work day. (R. 371.)

The ALJ cited several specific reasons for rejecting Plaintiff's testimony. For example, the ALJ considered the treatment records of Drs. Tindall, Green and Grippe. (R. 277.) Dr. Tindal found that Plaintiff had a full range of motion in her hands and wrists, normal grip strength, no decreased sensation or muscle atrophy. (R. 160-61.) Dr. Tindall

---

[29] Foote, 67 F.3d at 1561-62; Jones v. Department of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence).

[30] Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).

[31] Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

also noted that Plaintiff got out of her chair and on and off the examination table without significant difficulty. *Id.* Dr. Tindall concluded that Plaintiff had the functional capacity to alternatively sit and stand at will doing sedentary work for 6-8 hours per day with bending and twisting on an occasional basis and no repetitive use of forceful squeezing of the hands. (R. 162.) Additionally, Drs. Grippe and Green, state agency medical examiners, concluded that Plaintiff was capable of light or sedentary work. (R. 181-82,189.)

The ALJ also noted that Plaintiff's treatment by Dr. Stark supported the opinions of Drs. Tindall, Grippe and Green. (R. 277.) After the alleged disability onset date, Dr. Stark noted that Plaintiff had normal gait, good grip strength and a good global assessment. (R. 233-35, 241-42, 343.) Dr. Stark never marked a "poor" score for Plaintiff's global assessment or grip strength and never marked "severe" for polyarthritis on any of his medical reports, and never referred Plaintiff to a rheumatologist or back specialist. (R. 233-35, 340-44.)

Plaintiff's updated medical records from Angela Ford, a nurse practitioner, also substantiate the ALJ's credibility finding. Ms. Ford found that Plaintiff has normal extremities, normal back curvature, negative straight leg raises, non-tenderness of the spine, normal gait and did not appear distressed. Ms. Ford noted that Plaintiff stated that she leaves the house twice per week, sleeps better and her hands and feet are "a little stiff," but "not too bad." Plaintiff also reported to Ms. Ford that her medications were controlling her joint pain. (R. 232-33, 330, 332-33.)

The ALJ further found that Plaintiff's complaints of disabling pain were contradicted by the evidence that Plaintiff is able to do housework and cook. (R. 277.) The ALJ elicited testimony from Plaintiff that she is able to prepare sandwiches,

14

microwaveable meals and salads. Plaintiff also testified that she can clean her house over a two-day period, do her laundry with some assistance, twist door knobs, drive short distances, pay her rent and go shopping. Plaintiff also admitted that she "sleeps pretty good." (R. 32, 35, 39, 95, 100, 370-71, 373, 375.)

While the ability to engage in everyday activities of short duration such as housework does not disqualify a claimant from receiving disability benefits,[32] the Commissioner may properly rely on a claimant's daily activities, among other evidence, in determining whether a claimant is entitled to disability benefits.[33] Here, the ALJ did not exclusively rely on Plaintiff's daily activities in finding her testimony not fully credible. The ALJ determined, however, that the aggregate of Plaintiff's daily activities was inconsistent with her allegations of total disability.

Plaintiff also argues that the ALJ's finding that Plaintiff's medication "appears to be working" is erroneous and not supported by the record. Plaintiff maintains that her medication is not working as evidenced by the deterioration of her rheumatoid arthritis from a functional class two to a functional class three. However, the record supports the ALJ's finding. Plaintiff herself testified that her medications "seems to be helping," even if her rheumatoid arthritis is present (R. 361), that she gets some relief from her medication (R. 41), and that her medication lessens her pain. (R. 100.) Moreover, Dr. Tindall noted that Plaintiff's "current medication regiment significantly lessens her symptoms." (R.

---

[32] Lewis v. Callahan, 123 F.3d 1436, 1441 (11th Cir. 1997).

[33] Johnson v. Barnhart, 268 F.Supp 2d 1317, 1328 (M.D. Fla. 2002).

162.) Nurse Ford stated that Plaintiff felt like the medication is controlling her joint paint (R. 333).

Accordingly, for these reasons, the Court concludes that there was more than ample substantial evidence to support the ALJ's assessment to provide little weight to Plaintiff's subjective complaints in her testimony.

**C.** **The Commissioner Met His Burden of Establishing Other Work Is Available In The National Economy**

Based upon the VE's testimony, the ALJ found that Plaintiff could perform sedentary jobs, including dispatcher, appointment clerk, animal shelter clerk and order clerk. (R. 278.) Plaintiff contends that the Commissioner failed to meet its burden of establishing that there is other work in the national economy that Plaintiff can perform**.**

At the fifth step, the Commissioner's burden is to establish that a claimant can perform available, alternative employment.[34] Generally, the ALJ obtains such evidence through a VE, who, based on the claimant's age, education, work experience, and RFC, testifies as to whether there are jobs for such a person in the national and regional economy.[35]

Plaintiff first argues that the ALJ determined that Plaintiff has no transferable skills and, thus, as a matter of law, Plaintiff cannot perform the semi-skilled jobs of dispatcher, appointment clerk, or animal shelter clerk. While Plaintiff is correct that the ALJ found that Plaintiff did not have any transferable skills (R. 277), the transferability of skills is an

---

[34] 20 C.F.R. § 404.1560(c)(1) and (2); Wilson v. Heckler, 743 F.2d 218, 220 (4th Cir. 1984).

[35] 20 C.F.R. § 404.1520(g)(1).

issue only when the proposed job has been determined to be skilled or semi-skilled.[36] According to the Dictionary of Occupational Titles (the "DOT"), the fourth job listed by the ALJ - and conveniently not discussed by Plaintiff - is order clerk, which is classified as unskilled and has a SVP of 2.[37] With regard to order clerk, the VE testified that 145,000 order clerk jobs exist in the national economy. Accordingly, because at least one of the proposed jobs is classified as unskilled and the job of order clerk exists in significant numbers in the national economy, the issue of transferability does not impact the decision by the ALJ.

Secondly, Plaintiff argues that the VE's testimony conflicts with the DOT. Specifically, the ALJ asked the VE to assume that the individual is limited to "no repetitive use or forceful squeezing of hands" and equated "repetitive use" to mean "frequent" or "between six and eight hours." (R. 378, 380.) Plaintiff argues that if she is unable to frequently use her hands between six and eight hours a day then none of the jobs cited by the VE could be performed because each job requires frequent use of the hands.

Social Security Ruling 00-4p recognizes that the VE's testimony generally should be consistent with the information contained in the DOT.[38] Courts have interpreted SSR 00-4p to require an ALJ to elicit a "reasonable explanation" for a conflict between a VE's

---

[36] SSR 82-41.

[37] Dictionary of Occupational Titles (U.S. Dep't of Labor 4th ed. 1991), § 209.567-014.

[38] SSR 00-4p.

testimony and the DOT.[39] When a conflict does exist, the ALJ must inquire on the record as to whether there are any inconsistencies between the VE's testimony and the DOT.[40]

The Court must first consider whether a conflict exists in the instant case between the VE's testimony and the DOT entries for with the jobs proposed by the VE.  There is no conflict between with the DOT entries and the VE's definition of "repetitive."

For example, a review of the DOT entry for order clerk, classifies under worker functions, the job as requiring handling at a level 7 and under physical demands requires the worker to engage in frequent handling and fingering only between 1/3 to 2/3 of the time.[41] Based upon this description, the job of order clerk would require frequent use of hands for a maximum of five hours and twenty-eight minutes per day (i.e. no more than two thirds of the day). As such the maximum frequency for handling under the DOT does not directly conflict with the ALJ's definition of repetitive, which was defined to mean a limitation on handling for a maximum of six to eight hours.

Lastly, Plaintiff contends that the ALJ's hypothetical questions did not comprehensively describe Plaintiff's limitations. Specifically, state agency psychological consultant, Alan Steed, Ph.D. opined that Plaintiff's affective disorder limits her to simple or repetitive tasks, which Plaintiff suggests is at odds with her testimony that she suffers headaches, her testimony concerning her medication history, and her testimony that Plaintiff has significant memory and concentration problems, fatigue, wrist pain and dizziness. According to Plaintiff, had the ALJ included these limitation in the hypothetical

---

[39] Leonard v. Astrue, 487 F.Supp. 2d 1333, 1339 (M.D. Fla. 2007).

[40] Jones v. Apfel, 190 F.3d 1224, 1229-30 (11th Cir. 1999); SSR 00-4p.

[41] Dictionary of Occupational Titles (U.S. Dep't of Labor 4th ed. 1991), § 209.567-014.

question, the VE would have testified that Plaintiff could not perform any of the jobs listed by the ALJ in his decision.

The ALJ must consider all "severe" impairments when eliciting testimony from a VE.[42] That does not mean, however, that the ALJ must " include findings in the hypothetical that the ALJ [has] properly rejected as unsupported" by the record.[43]

In the instant case, the ALJ was not required to include any mental limitations in his hypothetical because he properly concluded that the mental impairment was non-severe, a finding fully supported by substantial evidence in the record. (R. 275-76.)

For example, after conducting a thorough consultative mental examination, Dr. Brown did not find that Plaintiff was depressed. During the examination, Dr. Brown found Plaintiff fully cooperative, generally able to follow directions and capable of sustaining attention. (R. 163-64.) Dr. Brown concluded that Plaintiff was receptive, insightful, socially and interpersonally appropriate and fully capable of independently taking care of her daily needs. Id. Dr. Brown also noted that Plaintiff stated that her medications were effective. (R. 164.)

Dr. Steed, the state agency psychologist, found that Plaintiff only had mild restrictions of daily activities, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence and pace. (R. 220.) Notably, Dr. Steed opined that at a *minimum*, Plaintiff could perform simple, repetitive tasks.

---

[42] Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985).

[43] Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004).

Nurse Ford also noted that Plaintiff's "depression [is] stable" and that Plaintiff "denies feeling depressed." (R. 330, 332, 335.) Significantly, the record discloses that Plaintiff never sought mental health counseling and the first psychological examination Plaintiff had was performed by Dr. Brown. (R. 51.) Finally, the ALJ was not required to address Plaintiff's subjective complaints because, as discussed by the Court above, Plaintiff subjective complaints were not supported by substantial evidence.

Accordingly, for these reasons, the Court concludes that the ALJ properly included Plaintiff's severe impairments in his hypothetical questions posed to the VE.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED.**

**IN CHAMBERS** in Ocala, Florida, on March 14, 2008.

GARY R. JONES
United States Magistrate Judge

Copies to:
   The Honorable Wm. Terrell Hodges
   Senior United States District Judge

   Counsel of Record